Karin M. Gunter, Esquire
PA Id No. 79852
7323 N. 21st Street
Philadelphia, PA 19138-2107
(215) 548-9992

ATTORNEY FOR PLAINTIFF,
JOANNE GRAHAM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOANNE GRAHAM,<br>    Plaintiff<br><br>v.<br><br>THE SCHOOL DISTRICT OF PHILADELPHIA<br><br>    Defendant. | :<br>:<br>:<br>:<br>:  Civil Action No.<br>:<br>:<br>:  JURY TRIAL DEMANDED |

**COMPLAINT**

**Preliminary Statement**

This action is brought by an employee against her former employer for discrimination in compensation; terms, conditions and privileges of employment; harassment; wrongful discharge and retaliation based on race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1 *et seq.* ("Title VII"), Philadelphia Fair Practices Ordinance, as amended, Philadelphia Code, ch. 9, §§ 1100-1110 *et seq.* ("PFPO"), and Pennsylvania Human Relations Act, as amended, 43 P.S. §§951-963 ("PHRA"); race discrimination in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"); and violation of

1

statutorily protected rights for equal pay for comparable work and retaliation under the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d)("EPA").

Plaintiff seeks compensatory damages including, without limitation, front and back pay; lost wages; liquidated damages; emotional distress damages; attorney's fees pursuant to 42 U.S.C. § 1988(b) and 43 P.S. § 962; expert fees pursuant to 42 U.S.C. § 1988(c); costs; and such other relief as this Court deems just and proper.

## Jurisdiction and Venue

1. Original jurisdiction over Plaintiff's federal question claims is conferred upon this Court by 28 U.S.C. § 1331. Supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court pursuant to 28 U.S.C. § 1367(a).

2. Venue lies in this district by 28 U.S.C. § 1391(b) and (c) in that Defendant's principal place of business and a substantial part of the events which give rise to the claims occurred in this judicial district.

## Parties

3. Plaintiff JOANNE GRAHAM ("Plaintiff" or "Graham") is an adult person who resides at 8402 Lyons Place, Philadelphia, PA 19153. Ms. Graham is a citizen of the United States.

4. Defendant THE SCHOOL DISTRICT OF PHILADELPHIA ("Defendant" or "School District") is a Pennsylvania municipal unit engaged in the business of public education. Its principal place of business address is 440 N. Broad Street, Philadelphia, PA 19130.

5. The School District employs in excess of 500 employees and has employed such a number of employees at all times relevant to this matter.

**Factual Allegations**

6. Defendant hired Plaintiff Joanne Graham in July 1999.

7. Between July 1999 and May 2003, Graham held several positions with the Defendant including Post Secondary Readiness Coordinator, Grant Manager, and Middle School Coordinator.

8. In April 2003, Plaintiff received a telephone call from Robert Coccagna ("Coccagna") informing Plaintiff of a position in Defendant's Office of Secondary Education ("OSE") that would assist him with the administration and oversight of federal and state service learning and character education grants ("Service Learning Grants") awarded to the School District.

9. In April 2003, Coccagna was the Defendant's OSE Director/Manager of Service Learning Grants.

10. In April 2003, Coccagna asked Plaintiff to transfer into Defendant's OSE in order to assist him in the administration and oversight of Defendant's service learning grants.

11. The United States Department of Education ("Department of Education" or "DOE") awards, funds and oversees the administration of federal service learning and character education grants.

12. The Department of Education awarded a federal service learning and character education grant to Defendant for a four-year term beginning with the 2002-2003 school year.

13. The total amount of the DOE's grant awarded to Defendant under the four-year term contract was Two Million Dollars ($2,000,000.00).

14. In May 2003, Plaintiff transferred to Defendant's OSE.

15. On May 12, 2003, Defendant hired Plaintiff as OSE Service Learning and Character Education Grant Coordinator.

16. As OSE Service Learning and Character Education Grant Coordinator, Plaintiff reported on a daily basis to Coccagna.

17. On or about June 2003, Plaintiff learned Defendant failed to provide annual reports to DOE as required under its Service Learning Grant; none of the three contractors servicing the DOE Service Learning Grant had been paid; and two of the three contractors, one of which was City Year, had worked the entire 2002 – 2003 school year without contracts.

18. On or about July 2003, in a meeting attended by Defendant Chief Executive Officer Paul Vallas ("Vallas"), Defendant expressed its intention of hiring two coordinators for service learning grants per region. There are 10 regions in the School District.

19. In August 2003, Coccagna left the position of OSE director/manager service learning grants due to stress related overwhelming workload, *inter alia*.

20. In August 2003, Plaintiff assumed duties of managing all state and federal service learning grants in Defendant's OSE as previously performed by Coccagna in addition to her duties as Service Learning and Character Education Grant Coordinator.

21. In August 2003, Plaintiff began reporting solely to Rosalind Chivis ("Chivis").

22. At all times relevant to this matter, Rosalind Chivis was the Executive Director of Defendant's OSE.

23. In August 2003, as a result of compliance problems discovered in June 2003, Plaintiff began working some 70 – 90 hour weeks, including nights and weekends, in an effort to get Defendant's seven state and federal service learning grants in order and in compliance with

state and federal mandates.

24. Beginning in August 2003, Plaintiff complained on several occasions to Chivis of Defendant's failure to give Plaintiff the job title, staff and salary afforded former OSE service learning grants directors/managers Ken Holdsman and Coccagna for performing the same duties and responsibilities of administration and oversight of Defendant's federal and state service learning grants.

25. Beginning in August 2003, Plaintiff complained to Chivis about unfair and unequal treatment received by Plaintiff since predecessors Coccagna and Holdsman did not do the work required under the service learning grants, but both men received staff, job title and commensurate salary.

26. As a result of Plaintiff's complaints to Chivis, Chivis assured Plaintiff she would hire a coordinator for OSE Service Learning Grants to assist Plaintiff.

27. In fact, Chivis interviewed Plaintiff's recommended choice for the OSE coordinator position Kathleen Lee. However, at all times relevant to this matter, Chivis failed to hire anyone for the position of coordinator for OSE Service Learning Grants to assist Plaintiff.

28. Chivis reported Plaintiff's concerns of unequal treatment to Dr. Creg E. Williams ("Williams"), OSE Deputy Chief Academic Officer.

29. At all times relevant to this matter, Williams was Chivis's supervisor.

30. On or about February 2004, per Chivis, Williams promised Plaintiff would receive a salary raise and title change in July 2004 retroactive to August 2003 commensurate with position of OSE director/manager of service learning grants as held by Coccagna and Holdsman.

31. On or about February 2004, per Chivis, Williams also stated Defendant did not make salary raises or job title changes in the middle of a fiscal year.

32. Defendant's fiscal year begins in July.

33. On or about May 2004, Plaintiff attended a meeting with Defendant CEO Vallas; Natalye Paquin, Vallas's then-Chief of Staff; Executive Director of City Year Sean Holliman; other directors of contractor City Year; and Joseph Banner, President of the Board of Directors of City Year.

34. During this meeting, CEO Vallas expressed his desire to increase contractor City Year's budget under the DOE Service Learning Grant.

35. At the time of the meeting, City Year's contract with Defendant under the DOE Service Learning Grant involved servicing 8 schools in the School District for $250,000.

36. Defendant CEO Vallas wanted to award contractor City Year $600,000 for all schools in the School District for the 2004 – 2005 school year as well as retroactively award City Year an additional $400,000 for the 2003 – 2004 school year.

37. Defendant CEO Vallas asked Plaintiff to work on increasing City Year's contract.

38. During this meeting, Plaintiff expressed her concerns over awarding contractor City Year additional funds and schools under the DOE Service Learning Grant since City Year was not meeting the compliance standards as established by the DOE for the 2003 – 2004 school year. Plaintiff instead offered to work with City Year to put together a plan to get them into compliance.

39. Additionally, Plaintiff expressed her desire to reduce the amount of City Year's contract under the DOE Service Learning Grant for the 2004 – 2005 school year.

40. Shortly after Plaintiff expressed her concerns about City Year, the meeting ended.

41. On or about June 4, 2004, Plaintiff received her employee performance appraisal from Chivis.

42. In Plaintiff's June 2004 performance appraisal, Plaintiff received a weighed overall rating of 4.5 out of 5.

43. Based upon Defendant's performance rating system, a rating of 4 means "Exceeds expectations in most areas. Consistently achieves expectations in all areas and exceeds in more than 50% of those areas."

44. Based upon Defendant's performance rating system, a rating of 5 means "Exceeds expectations in all areas."

45. In Plaintiff's June 2004 performance appraisal, Chivis further commented, "Joanne has gone above and beyond the mandates of the position that she was hired for. I am therefore recommending that she receive a 5% increase in her current salary and that her job description be changed to manager with commensurate salary effective July 1, 2004."

A true and correct copy of Plaintiff's signed June 2004 Employee Performance Appraisal is attached as Exhibit "A".

46. On or about June 7, 2004, the U.S. Department of Education, Director of the Service Learning Grant, Sharon J. Burton, and Paul Kesner, Director of Character Education Grant, made a 2-day site visit to Philadelphia.

47. DOE directors interviewed Plaintiff, Williams, Chivis, and Defendant's OSE Director of Grants, Marsha Shulman.

48. During the DOE's site visit, Plaintiff received positive responses and a good report from DOE director Sharon Burton.

49. Plaintiff also learned from Ms. Burton that the DOE Service Learning Grant contained provisions for director/manager's salary in the amount of $81,000, which was more than 9% more than Plaintiff's salary of $74,000.

50. On or about June 23, 2004, Chivis informed Plaintiff of Plaintiff's imminent termination. Chivis learned from Williams that CEO Vallas recommended Plaintiff's termination, and that Vallas expressed his interest in "getting rid" of Plaintiff at least three times since the May 2004 meeting.

51. On or about June 23, 2004, Plaintiff received a certified letter from Defendant informing her of her immediate termination from employment effective June 30, 2004. Defendant's stated reason for terminating Plaintiff was due to lack of funding in DOE Service Learning Grant for Plaintiff's salary, and subsequently the School District did not have the funds loaded in its budget to pay Plaintiff's salary. In fact, Defendant stated "[t]here is no position for you for the fiscal year commencing July 1, 2004 and ending June 30, 2005."

A true and correct copy of Defendant's June 22, 2004 termination letter to Plaintiff is attached as Exhibit "B".

52. On or about July 5, 2004, Plaintiff received a letter from Defendant reinstating her into her former position due to "the establishment of a new position allocation, the approval or additional funding, or the re-evaluation of your status".

A true and correct copy of Defendant's June 30, 2004 reinstatement letter is attached as Exhibit "C".

53. In July 2004, Chivis informed Plaintiff that Plaintiff would no longer work on service learning grants and would not work with contractor City Year.

54. On or about July 8, 2004, Heather Margolis, a director of contractor City Year sent an e-mail correspondence to Williams stating Margolis understood Plaintiff's position in Defendant's OSE was vacate and expressing Margolis' interest in filling that position.

55. In July 2004, despite Chivis's statements to the contrary, Plaintiff continued to receive OSE service learning grants work duties including, but not limited to, preparing annual reports for DOE, in addition to receiving managerial and training assignments for other OSE programs.

56. On or about September 2004, CEO Vallas saw Plaintiff in the hall while at work.

57. On or about September 15, 2004, Defendant once again terminated Plaintiff's employment effective October 1, 2004 for the identical reasons stated in its June 22, 2004 letter.

A true and correct copy of Defendant's September 15, 2004 letter to Plaintiff is attached as Exhibit "D".

58. Plaintiff's last day of work at the School District was October 1, 2004.

59. As of October 1, 2004, Defendant failed to give Plaintiff a salary raise, job title change or staff for the position of OSE director/manager of service learning grants as promised.

60. Upon information and belief, on or after October 2004, Defendant hired a white female as Director/Manager of Service Learning and Character Education Grants.

61. On or about January 4, 2005, Plaintiff filed a complaint with the Philadelphia Commission on Human Relations ("PCHR") against Defendant under the Philadelphia Fair

Practices Ordinance and other relevant state statutes based upon claims of race and sex discrimination relating to terms, conditions, and privileges of employment (failure to change Plaintiff's job title; understaffing her unit and underpaying her); harassment; wrongful discharge; retaliation; and unequal pay for comparable work.

A true and correct copy of Plaintiff's PCHR complaint is attached as Exhibit "E".

62. Plaintiff's PCHR complaint was dually filed with the U.S. Equal Employment Opportunity Commission ("EEOC").

63. On February 15, 2006, PCHR waived its jurisdiction over Plaintiff's case to EECO for issuance of Right to Sue Letter.

A true and correct copy of PCHR's February 15, 2006 letter is attached as Exhibit "F".

64. On April 19, 2006, Plaintiff received EEOC's Right to Sue Letter.

A true and correct copy of EEOC"s Right to Sue Letter is attached as Exhibit "G".

**Count I – Race Discrimination**
**(Title VII)**

65. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra*.

66. Plaintiff Joanne Graham is an African American female.

67. Robert Coccagna is a white male.

68. Ken Holdsman is a white male.

69. Paul Vallas is a white male.

70. Joseph Banner is a white male.

71. Heather Margolis is a white female.

72. Prior to her termination, Plaintiff as OSE Service Learning and Character Education Coordinator received the highest employee performance appraisal rating in Defendant's OSE under Executive Director Chivis. At the time, OSE had approximately 25 employees under Chivis.

73. As an African American female, Plaintiff is a member of a protected class.

74. Plaintiff was qualified for the positions of coordinator and director/manager of service learning and character education grants in Defendant's OSE.

75. Plaintiff's job performance was excellent at all times relevant to this action.

76. Defendant School District terminated Plaintiff from employment as Service Learning and Character Education Grants Coordinator effective June 30, 2004 and October 1, 2004.

77. Defendant gave former employee Ken Holdsman the job title of OSE Director/Manager of Service Learning and Character Education Grants; staff of two people (Danielle Floyd and a clerical worker); and salary in the upper $90,000.00.

78. Defendant gave former employee Robert Coccagna the job title of OSE Director/Manager of Service Learning and Character Education Grants; staff of one person (Plaintiff Graham); and salary of more than $90,000.00.

79. From August 2003 to October 1, 2004 inclusive, Defendant failed to give Plaintiff the job title, staff and salary for the position of OSE Director/Manager of Service Learning and Character Education Grants due to Plaintiff's race, despite Plaintiff performing equal or more job duties and responsibilities as predecessors Holdsman and Coccagna.

80. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating

an inference of racial discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages, and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count II – Race Discrimination
### (PFPO)

81. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra*.

82. From August 2003 to October 1, 2004 inclusive, Defendant failed to give Plaintiff the job title, staff and salary for the position of OSE Director/Manager of Service Learning and Character Education Grants due to Plaintiff's race, despite Plaintiff performing equal or more job duties and responsibilities as predecessors Holdsman and Coccagna.

83. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating an inference of racial discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count III – Race Discrimination
### (PHRA)

84. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra*.

85. From August 2003 to October 1, 2004 inclusive, Defendant failed to give Plaintiff the job title, staff and salary for the position of OSE Director/Manager of Service Learning and

Character Education Grants due to Plaintiff's race, despite Plaintiff performing equal or more job duties and responsibilities as predecessors Holdsman and Coccagna.

86. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating an inference of racial discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count IV – Race Discrimination
### (Section 1981)

87. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra*.

88. Defendant intended to discriminate against Plaintiff on the basis of her race when it failed to provide Plaintiff the same benefits, terms, conditions and privileges of employment (job title, salary and staff for the position of OSE director/manager of service learning and character education grants) as afforded Holdsman and Coccagna.

89. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating an inference of racial discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count V – Sex Discrimination
### (Title VII)

90. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra*.

91. From August 2003 to October 1, 2004 inclusive, Defendant failed to give Plaintiff the job title, staff and salary for the position of OSE Director/Manager of Service Learning and Character Education Grants due to Plaintiff's sex, despite Plaintiff performing equal or more job duties and responsibilities as predecessors Holdsman and Coccagna.

92. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating an inference of gender discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

**Count VI – Sex Discrimination**
**(PFPO)**

93. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra*.

94. From August 2003 to October 1, 2004 inclusive, Defendant failed to give Plaintiff the job title, staff and salary for the position of OSE Director/Manager of Service Learning and Character Education Grants due to Plaintiff's sex, despite Plaintiff performing equal or more job duties and responsibilities as predecessors Holdsman and Coccagna.

95. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating an inference of gender discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages

and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count VII – Sex Discrimination
### (PHRA)

96. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra.*

97. From August 2003 to October 1, 2004 inclusive, Defendant failed to give Plaintiff the job title, staff and salary for the position of OSE Director/Manager of Service Learning and Character Education Grants due to Plaintiff's sex, despite Plaintiff performing equal or more job duties and responsibilities as predecessors Holdsman and Coccagna.

98. Defendant fired Plaintiff effective October 1, 2004 under circumstances creating an inference of gender discrimination.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count VIII – Sex Discrimination
### (EPA)

99. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra.*

100. Plaintiff, Holdsman and Coccagna worked in Defendant's OSE Service Learning and Character Education Grants.

101. Holdsman and Coccagna received salaries of more than $90,000.00 each for duties performed as director/manager of the OSE Service Learning and Character Education Grants.

102. Plaintiff received an unequal pay of $74,000.00 for comparable work in the performance of duties of the OSE Director/Manager of Service Learning and Character Education Grants.

103. Plaintiff's performance of such duties required the equal skill, effort and responsibility as required by Holdsman and Coccagna.

104. Additionally, Plaintiff performed such duties under working conditions were made worst by Defendant due to its failure to provide Plaintiff with staff.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

**Count IX – Wrongful Discharge**

105. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra.*

106. In May 2004, Defendant via CEO Vallas asked Plaintiff to violate the mandates of a federally funded grant by awarding Service Learning and Character Education Grant contractor City Year additional funding and schools under the U.S. Department of Education's Service Learning and Character Education Grant.

107. Plaintiff informed Vallas that contractor City Year was not in compliance with DOE standards for its Service Learning and Character Education Grant.

108. Plaintiff refused to award City Year additional retroactive funding of $400,000.00 for the 2003 – 2004 school year.

109. Plaintiff refused to award City Year additional funding ($600,000.00) and

additional schools for the 2004 – 2005 school year under the DOE's Service Learning and Character Education Grant.

110. Plaintiff did offer to work with contractor City Year to get them in compliance with DOE grant standards/mandates.

111. Due to Plaintiff's failure to comply with CEO Vallas's instruction to award contractor City Year additional funding and schools, which Plaintiff reasonably believed violated DOE compliance standards, Defendant wrongfully discharged Plaintiff in June 2004 and again in October 2004.

112. Defendant has a policy of pressuring and harassing employees who do not comply with CEO Vallas's "requests" and "inquiries" for awarding School District contracts.

113. Defendant's wrongful discharge of Plaintiff in June 2004 and again in October 2004 is a continual violation of public policy against misappropriation of federally funded grants.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### Count X – Retaliation (Race Discrimination)
### (Title VII, PFPO and PHRA)

114. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra.*

115. Defendant retaliated against Plaintiff based on Plaintiff's race, when it fired Plaintiff in June 2004 and again in October 2004 for Plaintiff's complaining of unequal treatment by Defendant for Defendant's failure to give Plaintiff a job title, salary raise and staff for the

17

position of OSE director/manager of service learning and character education grants as afforded predecessors Holdsman and Coccagna.

116. Defendant retaliated against Plaintiff based on Plaintiff's race, when it fired Plaintiff in June 2004 and again in October 2004 for Plaintiff's refusal to award additional funding and schools to contractor City Year under the DOE Service Learning Grant, as requested by Defendant CEO Vallas, in contravention of DOE compliance standards for federally received funds.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

**Count XI – Retaliation (Sex Discrimination)**
**(Title VII, PFPO, PHRA and EPA)**

117. Plaintiff re-alleges and incorporates by reference to all paragraphs, *supra.*

118. Defendant retaliated against Plaintiff based on Plaintiff's sex, when it fired Plaintiff in June 2004 and again in October 2004 for Plaintiff's complaining of unequal treatment by Defendant for Defendant's failure to give Plaintiff a job title, salary raise, and staff for the position of OSE director/manager of service learning and character education grants as afforded predecessors Holdsman and Coccagna.

119. Defendant retaliated against Plaintiff based on Plaintiff's sex, when it fired Plaintiff in June 2004 and again in October 2004 for Plaintiff's refusal to award additional funding and schools to contractor City Year under the DOE Service Learning Grant, as

requested by Defendant CEO Vallas, in contravention of DOE compliance standards for federally received funds.

120. Defendant willfully retaliated against Plaintiff based on Plaintiff's sex, when it failed to give Plaintiff a salary raise for performing comparable work as predecessors Holdsman and Coccagna for the position of OSE director/manager of service learning and character education grants and opted to fire Plaintiff effective June 30, 2004 instead of granting her a recommended and promised pay raise effective July 1, 2004.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her compensatory including, without limitation, front and back pay, lost wages, liquidated damages and emotional distress damages in excess of $75,000.00; attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

Respectfully submitted:

**KARIN M. GUNTER ATTORNEY AT LAW**

Dated: June 12, 2006  /s/ Karin M. Gunter_____
Karin M. Gunter, Esquire
Attorney for Plaintiff, Joanne Graham